# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES H. BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18CV310 HEA |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff is not disabled and thus not entitled to disability insurance benefits or supplemental security income under Title II, 42 U.S.C. §§ 401-434, and Title XVI, 42 U.S.C. § 1381-1385, respectively. For the reasons set forth below the decision of the Commissioner is affirmed.

## Background and Procedural History

Plaintiff filed his application for disability insurance benefits under Title II on August 5, 2014, and his application for SSI under Title XVI on August 8, 2014. Plaintiff was born in 1967, and alleged disability beginning June 1, 2014. In his Disability Report, Plaintiff alleged disability due to manic depressive condition, back pain, sciatica, and high blood pressure. Plaintiff's applications were denied

initially. Following an administrative hearing before Administrative Law Judge Thomas Auble on September 15, 2016, Plaintiff's claims were denied in a written opinion by an ALJ, dated April 19, 2017. On January 5, 2018, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## The ALJ's Decision

ALJ Auble found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015. He found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2014.

The ALJ found that Plaintiff has severe impairments of degenerative disc disease of the lumbar spine and major depressive disorder. The ALJ found that Plaintiff's impairments of hypertension and carpal tunnel syndrome to be non-severe. The ALJ did not find that Plaintiff had an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. In making this determination, the ALJ considered Plaintiff's degenerative disc disease under the requirements of Listing 1.04, and Plaintiff's mental impairments under the requirements of Listing 12.04. In both cases, the ALJ found that the requirements were not met.

The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Plaintiff can never climb ladders, ropes, or scaffolds. He can no more than occasionally climb stairs or ramps, and occasionally balance, stoop, kneel, crouch, and crawl. Plaintiff can have no exposure to excessive vibration, unprotected heights, or hazardous machinery. He is limited to work involving simple, routine tasks. Plaintiff can work only in a low stress job, defined as having only occasional decision making and only occasional changes in work setting. Plaintiff cannot work with a production quota, meaning no strict production standard and no rigid production pace. He can have only occasional interaction with the general public and coworkers. The ALJ concluded that Plaintiff's impairments would not preclude him from performing work that exists in significant numbers in the national economy, those jobs including the sedentary and unskilled jobs of small product assembler, product sorter, and product mounter.

With respect to Plaintiff's degenerative disc disease and depression, the ALJ found that those impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record. For example, the ALJ noted that Plaintiff's physical examinations frequently showed full strength and intact sensation, and often showed that Plaintiff's gait was normal. The ALJ also noted inconsistencies in the record regarding Plaintiff's drug use.

## Standard of Review

The standard of review here is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Substantial evidence is less than preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *See id.*

The Court must consider evidence that both supports and detracts from the Commissioner's decision but cannot reverse the decision because substantial evidence also exists in the record that would have supported a contrary outcome, or because it would have decided the case differently. *See Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). If the Court finds that the evidence supports two inconsistent positions and one of those positions represents the Commissioner's findings, the Court must affirm the Commissioner's decision. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The Eighth Circuit has stated that "[w]e defer heavily to the findings and conclusions of the Social Security Administration." *Id.* (*quoting Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)).

## Standard for Determining Disability

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611.

At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a) (4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611.

At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a) (4) (iv), 404.1520(f), 416.920(a) (4) (iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.*

At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to

other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

## Issues

Plaintiff asserts that his denial of benefits was not supported by substantial evidence. Specifically, Plaintiff raises the following issues: whether the ALJ performed a proper credibility analysis; whether the ALJ failed to discuss and identify migraines as a severe impairment; whether the RFC is supported by substantial evidence; and, whether the ALJ improperly weighed opinion evidence.

**Did the ALJ perform a credibility analysis as required by *Polaski*?**

Plaintiff claims that the ALJ's decision did not contain an evaluation of Plaintiff's credibility and failed to discuss the relevant factors from *Polaksi v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). In *Polaski*, the Eighth Circuit held that an ALJ analyzing a claimant's subjective pain complaints must consider five factors: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Id.* at 1322. Still, "The ALJ [is] not required to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). "Because the ALJ [is] in a better position to evaluate credibility, we defer

7

to his credibility determinations as long as they [are] supported by good reasons and substantial evidence." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

When discounting a claimant's subjective pain complaints, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the Polaski factors. *See Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

The ALJ addressed the five *Polaski* factors in his decision, even if he did not group them together or specifically cite to *Polaski*. The ALJ noted Plaintiff's daily activities such as preparing meals, shopping in stores, and going on social outings. The ALJ noted that Plaintiff's back pain was triggered by periods of standing and interfered with Plaintiff's sleep. The ALJ noted that Plaintiff had reported pain relief with Vicodin and epidural steroid and nerve root injections in 2015-16, and that Plaintiff testified at the hearing that marijuana was providing him some pain relief. The ALJ found that Plaintiff had moderate functional limitations.

"Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski*, 739 F.2d at 1322. The ALJ considered inconsistencies between Plaintiff's subjective complaints and the medical records, as well as Plaintiff's own inconsistent statements. He noted that although Plaintiff's medical records often showed positive straight leg testing on the left, those same records showed that Plaintiff frequently had normal gait, full strength, and intact sensation. The ALJ also noted that Plaintiff reported a 60% improvement when he was about 4 months post-surgery. Furthermore, the ALJ noted that Plaintiff was inconsistent about his cocaine use throughout the record.

The Court finds that the ALJ adequately addressed the *Polaski* factors and made specific credibility determinations regarding Plaintiff.

**Did the ALJ fail to discuss and identify migraines as a severe impairment?**

Plaintiff claims that the ALJ's "decision failed to discuss [Plaintiff's] migraines and failed to find they were a severe impairment, despite evidence that they cause more than minimal work related restrictions."

The ALJ did not err in failing to identify or discuss Plaintiff's migraines, as Plaintiff neither alleged migraines in his application for benefits, nor testified about migraines at the hearing. *See Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (A limitation not alleged in an application for benefits or during a hearing is waived on appeal.).

**Is the RFC is supported by substantial evidence?**

As stated above, the RFC is "the most a claimant can do despite [his] limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545 (a) (1)). An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010); see also 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

Plaintiff argues only that the RFC is not supported by substantial evidence because the ALJ's "decision fails to indicate how [the medical] findings support the conclusion that claimant can stand and walk 6 hours in an 8 hour day." However, Plaintiff does not cite to the record for this purported conclusion, nor can the Court locate it therein. In his decision, the ALJ noted that Plaintiff's RFC did not include the full range of "light work" and that Plaintiff had additional limitations. The ALJ noted that he asked the vocational expert about jobs in the national economy, accounting for Plaintiff's additional limitations. This is evidenced by the hearing transcript, in which the ALJ presented a hypothetical to the vocational expert that assumed a person who was able to "stand/walk for about

two hours and sit for up to six hours in an eight-hour workday with normal breaks."  The ALJ also presented a second hypothetical, modified to include an at-will sit/stand option.  In each case, the vocational expert opined that jobs exist in significant numbers in the national economy that such hypothetical persons could perform.[1]

The ALJ's finding that Plaintiff could stand or walk for two hours and sit for six hours in a normal workday is supported by substantial evidence.  Both of the doctors who opined as to Plaintiff's work-related abilities post-surgery thought that Plaintiff could stand or walk[2] for about 4 hours during a workday.  Of those two doctors, Dr. Morris opined that Plaintiff could sit for a total of 4 hours in a workday; Dr. Aubuchon opined that Plaintiff could sit for a total of 2 hours.  In records from an emergency room visit after the hearing date but before the ALJ issued his decision, Plaintiff told doctors that he actually achieved pain relief by sitting upright at 90 degrees.

Substantial evidence, therefore, supports the RFC with regard to Plaintiff's ability to sit, stand, and walk during an eight hour workday.

**Did the ALJ improperly weigh opinion evidence?**

---

[1] With respect to the latter hypothetical, the vocational expert opined that changing from sitting to standing more frequently than every 30 minutes would not be reasonable in the jobs she provided.
[2] The form completed by Dr. Aubuchon contained only one column for "Stand/walk."  In that column, both "less than 2 hours" and "about 4 hours" were checked.

11

Plaintiff claims that the ALJ improperly weighed the opinion advice of Drs. Morris, Aubuchon, Bryant and Dunn. The ALJ afforded partial weight to the opinion of Dr. Morris, little weight to Dr. Aubuchon, some weight to Dr. Bryan, and significant weight to Dr. Dunn.

"Physician opinions that are internally inconsistent [ ] are entitled to less deference than they would receive in the absence of inconsistencies." *Guillams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). "A treating source's opinion is not 'inherently entitled' to controlling weight." *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013). The regulations only accord controlling weight to source opinions if they are "not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Therefore, the Eighth Circuit has "upheld an ALJ's decision to discount a treating physician's opinions where those opinions were internally inconsistent, and where the physician's opinion was inconsistent with the claimant's own testimony." *Myers*, 721 F.3d at 525.

Drs. Morris, Aubuchon, and Bryan treated or examined Plaintiff in relation to his back pain. In assigning weight to these physicians' opinions, the ALJ relied heavily on objective medical evidence that Plaintiff had full strength, intact sensation, and normal gait. Indeed, evidence of full strength and intact sensation may be considered inconsistent with physicians' recommendations of serious orthopedic limitations. *See, e.g. Guillams*, 393 F.3d at 803 (physician's

recommendation of "total limitations in lifting and carrying" was inconsistent with his finding of musculature of good quality in upper extremities); *Rosa v. Astrue*, 708 F.Supp.2d 941, 953 (physician's treatment notes showing 5/5 extremity strength, normal sensation, and limited range of motion were inconsistent with recommended limitations); *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (two physicians' limited seating recommendations were properly assigned little weight, due in part due to another physician's finding of 5/5 strength in lower extremities).

Dr. Morris performed a consultative examination on Plaintiff which resulted in his recommendations of significant limitations for Plaintiff. The ALJ's RFC and hypothetical aligned with Dr. Morris's recommendations, except that Dr. Morris opined that Plaintiff could sit for only 4 hours a day and that Plaintiff could only occasionally reach, push, and pull. The ALJ wrote that he afforded less weight to the opinion of Dr. Morris because his recommended limitations were not consistent with Plaintiff's examination, which showed Plaintiff could walk without a cane, had full strength in all of his lower extremities excepting the left gastrocnemius, could rise from a chair, could get on and off the exam table independently, and had a normal gait. Plaintiff also showed 5/5 grip strength, 5/5 upper extremity strength, and only slightly reduced shoulder range of motion (140/150° flexion and abduction, 80/90° internal rotation, normal adduction and internal rotation).

Additionally, Dr. Morris' impressions were that Plaintiff had only residual minor low back pain post-surgery and residual left S1 radiculopathy. The ALJ also noted that Dr. Morris only examined Plaintiff once, and had no access to Plaintiff's prior medical records.

Dr. Aubuchon, Plaintiff's pain management doctor, filled out a Physical Residual Functional Capacity Questionnaire on March 27, 2017. Dr. Aubuchon opined therein that Plaintiff could sit only 20 minutes at a time, sit only 2 hours per day, and stand/walk about 4 hours per day.[3] The ALJ wrote that he afforded less weight to Dr. Aubuchon's recommended limitations because they were inconsistent with the evidence and Dr. Aubuchon's treatment records, which showed Plaintiff as having full motor strength, intact sensation and normal gait. Plaintiff argues that multiple places in the record show that he had an antalgic gait or limp, which he contends the ALJ ignored. While Dr. Aubuchon and some other BJC physicians did note that Plaintiff had an abnormal gait, the most recent of these observations was made before Plaintiff had back surgery, more than a year before Dr. Aubuchon completed the Physical Residual Functional Capacity Questionnaire. The recent, post-surgery records showed, as indicated by the ALJ, that Plaintiff's gait was normal.

---

[3] See footnote 2, *supra*.

Similarly, the ALJ's decision to give some weight to Dr. Bryan's opinion that Plaintiff could one day return to work was supported by substantial evidence. The ALJ noted that although this statement was conclusory and not specific, it was also consistent with the objective findings of full strength, intact sensation, and normal gait. The ALJ's assignment of partial weight to Dr. Bryan's opinion was reasonably supported by the evidence.

The ALJ placed significant weight on the opinion of Dr. Dunn, the state agency psychologist who reviewed Plaintiff's medical records and offered a mental residual functional capacity assessment. Plaintiff claims that ALJ did not explain why the RFC included occasional public contact, while Dr. Dunn's opined that Plaintiff "would perform best at a position that did not include dealing with the public…." In fact, Dr. Dunn also opined that Plaintiff was only moderately limited in his ability to interact appropriately with the general public. The ALJ acknowledged that Dr. Dunn's recommendations of moderate limitations were consistent with evidence of Plaintiff's "flat affect and some problems getting along with others." The RFC reflects these limitations.

The weights afforded by the ALJ to the medical opinions were appropriate given the inconsistencies in the record evidence.

## Conclusion

Based upon the foregoing, the ALJ's decision is supported by substantial evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment in accordance with this Opinion, Memorandum and Order is entered this same dated.

Dated this 17th day of May, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE